UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KERRIE SHAW, | CIVIL ACTION |
| Plaintiff, | 1:18-cv-07983 |
| v. | COMPLAINT |
| HOVG, LLC D/B/A BAY AREA CREDIT SERVICE; ESCALLATE, LLC; PENDRICK CAPITAL PARTNERS, LLC; AND EMERGENCY MEDICINE PHYSICIANS OF WILL COUNTY, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

**COMPLAINT FOR RELIEF PURSUANT TO**
**THE FAIR DEBT COLLECTION PRACTICES ACT**

Now Comes the Plaintiff, KERRIE SHAW ("Ms. Shaw"), by and through her attorneys, Whiteside & Goldberg, Ltd., complaining of the Defendants, HOVG, LLC d/b/a BAY AREA CREDIT SERVICE ("BAC"), ESCALLATE, LLC ("Escallate"), PENDRICK CAPITAL PARTNERS, LLC ("PCP") and EMERGENCY MEDICINE PHYSICIANS OF WILL COUNTY, LLC ("EMP") (collectively, "Defendants"), as follows:

**NATURE OF THE ACTION**

1.      Ms. Shaw brings this action as a consumer to secure redress from unlawful debt collection practices engaged in by Defendants. Ms. Shaw alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"), the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA"), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA") and the Illinois Workers' Compensation Act, 820 ILCS 305 *et seq.* ("IWCA").

1

2.      Jurisdiction is conferred upon this Court by 15 U.S.C. §1692k(d) (FDCPA), 47 U.S.C. §227(b)(3) (TCPA), and 28 U.S.C. §1331, as this action arises under the laws of the United States. Supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367. Declaratory relief is available pursuant to 28 U.S.C. §§2201, 2202 and 735 ILCS 5/2-701.

3.      Venue and personal jurisdiction are proper in this Court pursuant to 28 U.S.C. §1391 because Defendants conduct business in the Northern District of Illinois and the conduct complained of occurred within this district.

## PARTIES

4.      Plaintiff, Kerrie Shaw ("Ms. Shaw"), is a natural person residing in Coal City, Illinois.

5.      Ms. Shaw is a "consumer," as defined by the FDCPA, 15 U.S.C. §1692a(3).

6.      Defendant, HOVG, LLC d/b/a Bay Area Credit Service ("BAC"), is a Nevada company with its principal place of business located at 2701 E. Grauwyler Road, Irving, Texas 75061. BAC conducts and transacts business throughout Illinois. BAC's Illinois registered agent is Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

7.      BAC is a "debt collector," as defined by the FDCPA, 15 U.S.C. §1692a(6), because it regularly uses the nationwide credit reporting system, mails and/or the telephone to collect, or attempt to collect, defaulted debts asserted to be owed to another.

8.      At all times relevant to this complaint, BAC was collecting on a consumer "debt," as defined by the FDCPA, 15 U.S.C. §1692a(5).

9.      Defendant, Escallate, LLC ("Escallate"), is an Ohio company with its principal place of business located at 5200 Stoneham Road, Suite 200, North Canton, Ohio 44720.

Escallate conducts and transacts business throughout Illinois. Escallate's Illinois registered agent is Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

10.     Escallate is a "debt collector," as defined by the FDCPA, 15 U.S.C. §1692a(6), because it regularly uses the nationwide credit reporting system, mails and/or the telephone to collect, or attempt to collect, defaulted debts asserted to be owed to another.

11.     At all times relevant to this complaint, Escallate was collecting on a consumer "debt," as defined by the FDCPA, 15 U.S.C. §1692a(5).

12.     Defendant, Pendrick Capital Partners, LLC ("PCP"), is a Delaware company with is principal place of business located at 1714 Hollinwood Drive, Alexandria, Virginia 22307. PCP conducts and transacts business throughout Illinois. PCP's Illinois registered agent is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, Illinois 60604.

13.     PCP is a "debt collector," as defined by the FDCPA, 15 U.S.C. §1692a(6), because it regularly uses the nationwide credit reporting system, mails and/or the telephone in its business, the principal purpose of which is the collection of debts.

14.     At all times relevant to this complaint, PCP was collecting on a consumer "debt," as defined by the FDCPA, 15 U.S.C. §1692a(5).

15.     Defendant, Emergency Medicine Physicians of Will County, LLC ("EMP"), is an Illinois company with its principal place of business located at 4535 Dressler Road NW, Canton, Ohio 44718. EMP conducts and transacts business throughout Illinois. EMP's Illinois registered agent is Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

16.     EMP is part of a nationwide medical group specializing in the practice of emergency medicine.

## FACTS SUPPORTING CAUSE OF ACTION

### Work-Related Injury and Medical Treatment

17.　　At all times relevant to this complaint, Ms. Shaw was employed by the State of Illinois as a correctional officer at the Stateville Correctional Center in Crest Hill, Illinois.

18.　　On September 18, 2017, Ms. Shaw was injured at work when she was struck by an SUV in the Stateville parking lot ("the injury").

19.　　Immediately thereafter, Ms. Shaw was transported by ambulance to the emergency department at Presence Saint Joseph Medical Center ("Presence").

20.　　As a result of the injury, Ms. Shaw received medical treatment from the Presence medical staff, including an EMP physician.

21.　　At all relevant times, all of the medical treatment provided by EMP to Ms. Shaw at Presence was in connection with the injury.

22.　　During the course of her treatment with EMP at Presence, Ms. Shaw provided her employer's information and informed EMP that the injury for which she sought treatment occurred while she was at work.

23.　　The emergency department notes reviewed by EMP state: "PATIENT STATES HAD JUST ARRIVED AT WORK AT STATEVILLE … WHEN A CAR SWERVED AROUND THE CORNER AND STRUCK HER."

### Workers' Compensation Case

24.　　On October 2, 2017, in order to protect her rights and procure necessary medical treatment, Ms. Shaw, through counsel, filed an Application for Adjustment of Claim ("workers' compensation case") with the Illinois Workers' Compensation Commission ("Commission") for resolution of all claims related to the injury.

25.     The Illinois Workers' Compensation Act ("IWCA") requires medical providers to bill the employer for services rendered in connection with a known work-related injury and prohibits holding an employee liable for costs of treatment. *See* 820 ILCS 305/8.2(d) and (e).

## Unlawful Debt Collection

26.     As a result of the medical services provided by EMP in connection with the injury, Ms. Shaw allegedly incurred a debt to EMP in the amount of $1,323.00 ("subject debt").

27.     Rather than abiding by the IWCA and awaiting payment from Ms. Shaw's employer, EMP sent its bill directly to Ms. Shaw and demanded payment of the subject debt from her personally. *See* Exhibit A, a copy of the payment demand sent by EMP to Ms. Shaw, dated March 22, 2018 ("EMP payment demand").

28.     Upon receipt of EMP's payment demand, Ms. Shaw provided EMP with her employer's workers' compensation insurance information and informed EMP that the subject debt was included in her workers' compensation case.

29.     Despite receiving notice that it was included in her workers' compensation case, EMP continued its attempts to collect the subject debt from Ms. Shaw—eventually placing the account with Escallate, a debt collector wholly owned by EMP's successor by merger, US Acute Care Solutions, LLC.

30.     On or about May 30, 2018, Ms. Shaw received a payment demand for the subject debt sent by Escallate. *See* Exhibit B, a copy of the payment demand sent by Escallate to Ms. Shaw, dated May 24, 2018 ("Escallate payment demand").

31.     The Escallate payment demand indicated the outstanding account balance allegedly due to EMP and instructed Ms. Shaw to remit payment along with the detachable payment coupon included at the bottom of the page. *Id*.

32.     The Escallate payment demand further stated that "ESCALLATE has been retained by our client, US Acute Care Solutions (USACS), to collect on an outstanding debt associated with a visit to an Emergency Department that is staffed by a subsidiary organization of USACS (see Provider/Creditor name above)." *Id*.

33.     Around that time, Escallate began to call Ms. Shaw's cell phone to attempt to collect the subject debt using an automatic telephone dialing system ("ATDS") and pre-recorded messages.

34.     The Escallate payment demand and pre-recorded calls were false and confusing to Ms. Shaw, who had previously given notice of her workers' compensation case and insurance information to EMP several times.

35.     Having been unsuccessful in its attempts to collect the subject debt with its debt collector alter-ego, Escallate, EMP thereafter sold the subject debt to PCP, a debt-buyer.

36.     PCP subsequently placed the subject debt for collection with BAC, a collection agency.

37.     On or about September 30, 2018, Ms. Shaw received a payment demand for the subject debt sent by BAC. See Exhibit C, a copy of the payment demand sent by BAC to Ms. Shaw, dated September 27, 2018 ("BAC payment demand").

38.     The BAC payment demand indicated the outstanding account balance allegedly due to PCP and instructed Ms. Shaw to remit payment along with the detachable payment coupon included at the bottom of the page. *Id*.

39.     The BAC payment demand also instructed Ms. Shaw to call BAC if she had any questions about the subject debt, but only on the back-side of the page did it inform Ms. Shaw that if she disputed the subject debt, she would have to do so in writing. *Id*.

40.     All of the aforementioned collection attempts were false, misleading and unfair by virtue of the IWCA's prohibition on holding employees liable for costs of medical services provided in connection with a known work-related injury subject to a pending workers' compensation case.

41.     Moreover, EMP's collection practices, including holding Escallate out to be an individual third-party collection agency and selling the subject debt which it knew to be included in workers' compensation, are extremely unfair, deceptive, and against public policy.

### Willfulness/Recklessness

42.     As a sophisticated medical provider doing business in Illinois, EMP is aware of the billing procedures and the prohibition on holding employees liable for known work-related injuries set forth in the IWCA.

43.     EMP should not be allowed to circumvent the mandates of the IWCA by dunning consumers through Escallate and selling accounts known to be subject to workers' compensation to PCP.

44.     Escallate, PCP and BAC, as sophisticated debt collectors doing business in Illinois, should be aware of the IWCA and its prohibition on the collection of medical debt that is subject to workers' compensation.

45.     Escallate, PCP and BAC should have systems in place to prevent illegal attempts to collect debt in violation of the IWCA; a simple party search on the Commission's website would have provided them with all relevant information. *See* Exhibit D, screenshots of the Commission's Case Information Screen Name/Birth Inquiry for "shaw, kerrie," (http://neonwebk.cmcf.state.il.us/iic/icdw, last visited October 29, 2018).

46.     Had they taken this simple step, Escallate, PCP and BAC could have obtained Ms. Shaw's workers' compensation attorneys' contact information and inquired therewith as to the status of the subject debt, thus avoiding the violations of law complained of herein.

47.     Instead, Escallate, PCP and BAC choose to stick their heads in the sand, without any investigation, and unlawfully seek payment of the subject debt from Ms. Shaw.

48.     Escallate, PCP and BAC's willful and/or reckless conduct demonstrates that they do not have adequate procedures or systems in place to prevent illegal attempts to collect workers' compensation debt from innocent employees injured at work.

49.     Defendants' unfair, unscrupulous, and deceptive conduct demonstrates a willful and/or reckless indifference to the law and to the rights of innocent consumers.

50.     Defendants' conduct violates public policy and harms innocent consumers under the protection of the IWCA, who are forced either to accept financial responsibility for their work-related injury or live in fear that they will be subject to further collection activity, such as continued false payment demands and false credit reporting.

**Damages**

51.     Defendants' attempts to hold Ms. Shaw liable for the subject debt, which was incurred as a result of a work-related injury, have literally added insult to injury and caused Ms. Shaw to question the effect of her workers' compensation case.

52.     Defendants' unfair conduct resulted in emotional distress, agitation, and confusion to Ms. Shaw, forcing her to spend time repeatedly providing her workers' compensation information to EMP and consulting with her attorneys for clarification and to ensure that Defendants' wrongful collection efforts cease.

53.     Ms. Shaw was forced to incur expenses as a direct result of Defendants' illegal conduct thrust upon her, including costs incurred printing, mailing and/or faxing materials to EMP and her attorneys.

54.     Due to Defendants' illegal conduct, Ms. Shaw now faces the immediate harm of a wrongfully diminished credit rating, as well as the confusion and harassment caused by false invoices and payment demands.

## COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (Against all Defendants)[1]

55.     Ms. Shaw repeats and realleges paragraphs 1 through 54 as though fully set forth herein.

56.     Defendants violated 15 U.S.C. §§1692e(2), e(10), f, f(1) and g(b) through their debt collection efforts.

57.     Defendants violated 15 U.S.C. §1692e(2) when they misrepresented the legal status of the subject debt. Under the IWCA, Defendants were prohibited from attempting to collect the subject debt from Ms. Shaw at the time the payment demands were sent.

58.     Defendants violated 15 U.S.C. §1692e(10) when they falsely represented to Ms. Shaw that she is legally obligated to pay the subject debt. Under the IWCA, Defendants were prohibited from attempting to collect the subject debt from Ms. Shaw at the time the payment demands were sent.

59.     Defendants violated 15 U.S.C. §1692f by employing unfair and unconscionable means to collect the subject debt. Ms. Shaw is protected by the IWCA and does not have a duty or obligation to pay the subject debt; the conduct violates public policy and is illegal.

---

[1] Although EMP is not a debt collector, it is liable for Escallales's false statements made in connection with collection of the subject debt because it holds it Escallate out to be an independent third-party debt collection agency, when in fact, the two entities are so closely related that they could be considered one and the same.

9

60.     Defendants violated 15 U.S.C. §1692f(1) by attempting to collect a debt that they were not permitted by law to collect; the IWCA prohibits the collection of debt that is subject to workers' compensation.

61.     PCP and BAC violated 15 U.S.C. §1692g(b) by overshadowing Ms. Shaw's right to dispute the subject debt. The April payment demand first instructed her to call if had any questions, but only on the reverse side did it inform Ms. Shaw of her right to dispute the subject debt in writing.

62.     As pleaded in paragraphs 51 through 54, Ms. Shaw has suffered damages as a result of Defendants' illegal collection efforts.

63.     As a result of Defendants' violations of the FDCPA, and in consideration of the willful and reckless disregard for the law, Ms. Shaw is entitled to a declaratory judgment that Defendants' actions violate the FDCPA, as well as an award of actual damages, statutory damages, legal fees and costs pursuant to 15 U.S.C. §1692k(a)(1), (2) and (3).

WHEREFORE, Plaintiff, KERRIE SHAW, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.  declaring that the practices complained of herein are unlawful and violate the FDCPA;

b.  awarding Ms. Shaw actual damages in an amount to be determined at trial;

c.  awarding Ms. Shaw statutory damages of $1,000 (per Defendant) as prescribed by the FDCPA;

d.  awarding Ms. Shaw costs and reasonable attorneys' fees as provided under the FDCPA and;

e.  awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### (Against EMP and Escallate)

64.     Ms. Shaw repeats and realleges paragraphs 1 through 54 as though fully set forth herein.

65.     The TCPA prohibits calling persons on their cell phone, without consent, using an automatic telephone dialing system ("ATDS"), and/or a pre-recorded message. 47 U.S.C. §227(b)(1)(A)(iii).

66.     The TCPA defines ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator; and…to dial such numbers." 47 U.S.C. §227(a)(1).

67.     EMP and Escallate violated the TCPA by placing phone calls to Ms. Shaw's cell phone using ATDS and/or a pre-recorded message, without her consent.

68.     As pleaded in paragraphs 51 through 54, Ms. Shaw has suffered damages as a result of EMP and Escallate' illegal conduct, including costs associated with the use of her cell phone.

69.     Pursuant to 47 U.S.C. § 227(b)(3)(B), EMP and Escallate are liable to Ms. Shaw for at least $500 per call.

70.     Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), EMP and Escallate's willful and knowing violation of the TCPA should trigger this Honorable Court's ability to triple the damages to which Ms. Shaw is otherwise entitled.

WHEREFORE, Plaintiff, KERRIE SHAW, respectfully requests that this Honorable Court enter judgment in her favor as follows:

   a.   declaring that the practices complained of herein are unlawful and violate the TCPA;

   b.   awarding actual damages in an amount to be determined at trial;

c.   awarding damages of $500 per phone call pursuant to 47 U.S.C. §227(b)(3)(B);

d.   awarding damages of $1,500 per phone call pursuant to 47 U.S.C. §227(b)(3)(C) and;

e.   awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT III – VIOLATION OF THE ILLINOIS
### CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
(Against EMP)

71.     Ms. Shaw repeats and realleges paragraphs 1 through 54 as though fully set forth herein.

72.     Ms. Shaw is a "person," as defined by the ICFA, 815 ILCS 505/1(c).

73.     Ms. Shaw is a "consumer," as defined by the ICFA, 815 ILCS 505/1(e).

74.     At all times relevant to this complaint, EMP was engaged in "commerce," as defined by the ICFA, 815 ILCS 505/1(f).

75.     EMP's efforts to collect the subject debt from Ms. Shaw, including holding out Escallate to be a third-party debt collection agency, represents the use of deception and false pretenses.

76.     EMP's efforts to collect the subject debt from Ms. Shaw, including selling it to a debt buyer despite knowing it was subject to workers' compensation, represents the use of deception and false pretenses.

77.     It was deceptive for EMP to sell the subject debt because doing so falsely implies that Ms. Shaw is liable for the subject debt, when as a matter of law, she is not.

78.     It was unfair and against public policy for EMP to sell the subject debt because doing so negates the essential protections afforded by the IWCA.

79.     Upon information and belief, it is EMP's normal business practice to attempt to collect more money by billing the consumer/employee for the full price of its services or to sell the account, rather than seek payment in accordance with the IWCA.

80.     EMP intended for Ms. Shaw to rely on its deceptive conduct and pay the subject debt, for which she could not legally be held liable.

81.     Ms. Shaw relied on EMP's deceptive and unfair conduct by expending time and money consulting with her attorneys for clarification and to ensure that the collection efforts ceased, including money spent faxing false payment demands to her attorneys.

82.     Had EMP complied with the IWCA and billed her employer for the subject debt, Ms. Shaw would not have had to spend money faxing false payment demands to her attorneys.

83.     As pleaded in paragraphs 51 through 54, Ms. Shaw has sustained other damages as a result of EMP's deceptive and unfair business practices.

84.     As a result of EMP's violations of the ICFA, and in consideration of the willful and reckless disregard for the law, Ms. Shaw is entitled to a declaratory judgment that EMP's actions violate the ICFA, as well as an award of actual damages, punitive damages, legal fees and costs of this lawsuit.

   WHEREFORE, Plaintiff, KERRIE SHAW, respectfully requests that this Honorable Court enter judgment in her favor as follows:

   a.  declaring that the practices complained of herein are unlawful and violate the ICFA;

   b.  awarding Ms. Shaw actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

   c.  awarding Ms. Shaw costs and reasonable attorney fees;

   d.  awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT III – VIOLATION OF THE ILLINOIS WORKERS' COMPENSATION ACT
### (Against all Defendants)

85. Ms. Shaw restates and realleges paragraphs 1 through 54 as though fully set forth herein.

86. Defendants violated the IWCA by attempting to hold Ms. Shaw liable for costs of services that were rendered in connection with his work-related injury. *See* 820 ILCS 305/8.2(d) and (e).

87. It was inherently unfair and deceptive for Defendants to attempt to collect the subject debt from Ms. Shaw because doing so negates the essential protections afforded by the IWCA.

88. In doing so, Defendants have shown a willful and reckless disregard towards the IWCA and innocent employees injured in the course of duty.

89. As pleaded in paragraphs 51 through 54, Ms. Shaw has suffered damages as a result of Defendants' illegal collection efforts and disregard for the IWCA.

WHEREFORE, Plaintiff, KERRIE SHAW, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the IWCA;

b. awarding any other relief as this Honorable Court deems just and appropriate.


Dated: December 4, 2018                 Respectfully Submitted,

                                        /s/ Daniel J. McGarry
                                        Daniel J. McGarry, Esq. ARDC#6309647
                                        Whiteside & Goldberg, Ltd.
                                        155 N. Michigan Ave., Suite 540
                                        Chicago, IL 60601
                                        (312) 334-6875
                                        dmcgarry@wglawgroup.com
                                        *Counsel for Plaintiff*

14